IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EVS CODEC TECHNOLOGIES, LLC | § § § | |
| *Plaintiff* | § | CIVIL ACTION NO. |
| | § | |
| v. | § § | |
| | § | |
| HUAWEI DEVICE (SHENZHEN) CO., LTD. AND HUAWEI (DONGGUAN) DEVICE CO., LTD. | § § § | JURY TRIAL DEMANDED |
| | § | |
| *Defendants.* | § | |
| | § | |

## ORIGINAL COMPLAINT

Plaintiff EVS Codec Technologies, LLC ("ECT" or "Plaintiff") hereby submits this Complaint against Defendants Huawei Device (Shenzhen) Co., Ltd. ("Huawei Shenzhen") and Huawei (Dongguan) Device Co., Ltd. ("Huawei Dongguan") (collectively, "Huawei" or "Defendants") and states as follows:

## THE PARTIES

1.      ECT is a Texas limited liability company with a principal place of business at 6318 Shoreview Ct., Humble, Texas 77346.

2.      On information and belief, Defendant Huawei Device (Shenzhen) Co., Ltd. Is a Chinese corporation having a principal place of business in Bantain, Longgang District, Shenzhen, 518129, China.

3.      On information and belief, Defendant Huawei Device (Gongguan) Co., Ltd. is a Chinese corporation having a principal place of business in Nanfang Factory B2-5, No. 2 Xincheng

1

Road, Songshan Lake Science and Technology Industrial Zone, Dongguan, Guangdong, China 523808.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a) because this suit involves a controversy between parties of diverse citizenship and the amount in controversy exceeds $75,000.

5.     Huawei has solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas.

6.     Huawei is subject to personal jurisdiction in Texas and in this judicial district.

7.     This Court has personal jurisdiction over Huawei because of a mandatory forum-selection clause in a Patent License Agreement between Huawei and ECT (the "Patent License Agreement" or the "PLA") which is the subject of this Original Complaint and which expressly requires that "[a]ny legal action or other legal proceeding relating to this Agreement or the enforcement of any provision of this Agreement must be brought or otherwise commenced in a federal or state court in Texas."[1]   Indeed, in the PLA entered into in March of 2020, Huawei expressly waived and agreed not to "assert any objection to the jurisdiction of such state and federal courts in connection with any such legal proceeding."[2]

8.     Huawei is additionally subject to personal jurisdiction under the provisions of the Texas Long Arm Statute, TX CIV. PRAC. & REM CODE§ 17.041 et seq., by virtue of the fact that, upon information and belief, Huawei has availed itself of the privilege of conducting and soliciting business within this State as well as by others acting as Huawei's agents and/or

---

[1] PLA at §11.1.
[2] Id.

representatives, such that it would be reasonable for this Court to exercise jurisdiction consistent with principles underlying the U.S. Constitution, and the exercise of jurisdiction by this Court would not offend traditional notions of fair play and substantial justice.

9.      On information and belief, Huawei has established minimum contacts in Texas by negotiating the PLA through ECT's Texas-based representatives and by entering into the PLA, a contract with a Texas resident that, in whole or in part, contemplates performance in Texas.

10.     Venue as to Huawei Shenzen and Huawei Dongguan, foreign corporations, is proper in this judicial district under 28 U.S.C. §§ 139l(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## SUMMARY

11.     ECT originally filed a claim against Huawei in this Court alleging patent infringement on August 7, 2018.[3]  Pursuant to a Joint Stipulation and Motion to Dismiss Without Prejudice,[4] that patent infringement case was dismissed by this Court without prejudice on July 26, 2019.[5]

12.     Months later, in March of 2020, ECT and Huawei entered into the Patent License Agreement that is the subject of this Original Complaint.  The PLA was the product of months of arm's length negotiations between ECT and Huawei.  ECT and Huawei entered into the PLA as independent, unrelated, and sophisticated parties.  The PLA reflects as much, as both ECT and Huawei explicitly agreed that the "LICENSE HAS BEEN VOLUNTARILY AND MUTUALLY AGREED UPON AFTER INTENSIVE NEGOTIATIONS . . ."[6]  Predictably, the parties also

---

[3] Case No. 2:18-cv-00346
[4] *Id.* at Dkt 66.
[5] *Id.* at Dkt 67.
[6] PLA at §7.10 (emphasis in original).

3

acknowledged "having carefully read this Agreement, having obtained adequate explanations on the nature of its provisions, and understanding the latter."[7]

13.     Huawei agreed to pay valuable, cash consideration to enter into the PLA, and that consideration, while confidential, is very clearly identified in the PLA itself.[8]  Huawei did, in fact, pay the cash consideration specified in the PLA.  The PLA also references the parties' desire to resolve all aspects of present and future disputes between them and contains mutual releases of claims.

14.     The PLA explicitly provides that it constitutes a "full, final, and complete resolution and settlement" of the dispute between ECT and Huawei, "on the terms and conditions set forth [therein]."[9]  The PLA further contains a broad merger clause providing that "[t]his Agreement and any Appendices *constitute the entire agreement between the Parties and supersedes all prior written and oral agreements* with respect to the subject matter hereof . . . "[10]  ECT and Huawei further agreed that no provision of the PLA could be waived or modified "unless such waiver or consent is given in writing and signed by the Party claimed to have waived or consented."[11]  The PLA was never waived, modified, or amended.

15.     ECT and Huawei made written representations and warranties contained in the PLA.  Notably, Huawei explicitly "represent[ed] and warrant[ed] that in executing this Agreement, *it does not rely on any promises, inducements or representations made by any person*, whether a Party to this agreement or otherwise, *with respect to this Agreement or any other business dealing with any person, whether or not a Party to this Agreement, now or in the future*."[12]  Put differently,

---

[7] *Id.* at §12.9.
[8] *Id.* at §§4.1-4.5.
[9] *Id.* at 1.
[10] *Id.* at §12.7 (emphasis added).
[11] *Id.* at §12.13.
[12] *Id.* at §7.5.

Huawei clearly represented and warranted to ECT that the PLA was an independent, stand-alone, arm's length agreement and that the PLA did not include any other business dealings, side-deals, or consideration not explicitly contained within the four corners of the PLA.  ECT relied on Huawei's representations when entering into the PLA and would have never entered into the PLA without these representations.

16.    ECT is now a party to a pending arbitration in which Huawei is not a party.  In that arbitration, ECT's opponent has taken the position that, despite the explicit terms of the PLA to the contrary, the PLA does, in fact, have some sort of unstated or "hidden" consideration supporting it and that the PLA is also subject to business dealings and side-deals that are not contained anywhere in the PLA, existing nowhere within its four corners.  While ECT considers this position to be groundless and repeatedly contradicted by the express provisions of the PLA, ECT's opponent in the arbitration has taken the position that it has confirmed that Huawei enter into the PLA with the understanding that such extra-contractual consideration was part of the consideration for the PLA.  Although ECT has not been able to verify that is Huawei's position, such a position would contradict Huawei's representations made by Huawei to ECT in the PLA. Upon information and belief, ECT's opponent in the arbitration has communicated with Huawei representative Stephen Geiszler.  Mr. Geiszler did not negotiate the PLA on behalf of Huawei; instead, those negotiations were handled by Huawei negotiators residing in China.  Huawei has rebuffed ECT's attempts to clarify Huawei's position and its conduct.

17.    ECT's opponent in the arbitration has brought claims against ECT based on the notion that extra-contractual consideration supported the PLA. ECT has incurred, and will continue to incur, millions of dollars of fees and expenses to defend itself against these spurious allegations.  The PLA could not be clearer that there are no oral or other agreements outside of its

5

four corners and that it cannot be modified or waived except in writing.  This agreement, entered into by sophisticated parties represented by counsel, means what it says.  ECT turns to this Court for a declaratory judgment confirming as much.  Additionally, if Huawei has made statements to ECT's opponent inconsistent with the PLA's plain language, ECT brings its claims against Huawei for breach of representation and warranty in connection with the PLA and seeks compensation for all of its resulting damages, whether in terms of attorney's fees or indemnification for any judgment against ECT, regardless of how baseless or improper such a judgment would be.

## COUNT 1:  DECLARATORY JUDGMENT

18.     ECT requests a declaratory judgment from this Court that the PLA is a fully-integrated, unambiguous contract enforceable on its plain terms and that, consistent with those terms, there are no additional, oral, or other agreements pertaining to the PLA including any unstated or "hidden" consideration.

19.     ECT's request for a declaratory judgment is proper because this request will serve a useful purpose in clarifying and settling legal relations at issue and will provide relief from the uncertainty, insecurity, and controversy that have given rise to this proceeding.

20.     This Court has jurisdiction to hear this declaratory judgment action because the case is otherwise within its subject-matter jurisdiction and, to the extent Huawei's position is inconsistent with the nature of the PLA, there is an actual controversy between ECT and Huawei. Declaratory relief is available to ECT because there is an actual, substantial case or controversy between the parties who have adverse legal interests of sufficient immediacy and reality.

21.     In addition to a declaratory judgment, ECT also requests an award of damages following appropriate notice and a hearing on damages.  ECT also requests an award of attorney fees in its favor.

6

## COUNT II:  BREACH OF CONTRACT AND BREACH OF WARRANTY

22.     The PLA is a valid, enforceable contract between ECT and Huawei.  ECT is, therefore, a proper party to bring suit for breach of the PLA.  ECT performed its contractual obligations under the ECT, tendered its performance, or was excused from performing its contractual obligations under the PLA.

23.     Huawei expressly represented and warranted to ECT, among other such representations and warranties, that "[t]his Agreement and any Appendices *constitute the entire agreement between the Parties and supersedes all prior written and oral agreements* with respect to the subject matter hereof . . . "[13]  Huawei further represented and warranted that "*it does not rely on any promises, inducements or representations made bay any person, whether a Party to this Agreement or otherwise, with respect to this Agreement or any other business dealing with any person*, whether or not a party to this Agreement, now or in the future."[14]

24.     ECT would have not entered into the PLA without these representations and warranties.  The allegations made by ECT's opponent, if true, would be proof of a breach of these representations and warranties by Huawei to ECT.

25.     Huawei's alleged actions, if true, would be a breach of the PLA, thereby allowing ECT to recover all damages for all foreseeable injuries as well as to obtain equitable remedies. Huawei's breach deprives ECT of the benefits it reasonably expected when entering the PLA.

26.     ECT seeks all of its damages from Huawei resulting from its alleged actions, if true, including, but not limited to all of its attorney fees in the arbitration, all of its attorney fees in this matter, damages for loss of its expectation and reliance interests resulting from the PLA,

---

[13] PLA at §12.7 (emphasis added).
[14] *Id.* § 7.5 (emphasis added).

indemnification and reimbursement for all amounts of damages, if any, awarded in the arbitration, and damages for loss of business reputation for ECT.

## JURY DEMAND

27.    ECT hereby demands a trial by jury on all Counts so triable.

## PRAYER FOR RELIEF

WHEREFORE, ECT requests entry of judgment in its favor against Huawei as follows:

a.  a declaratory judgment from this Court that the PLA is a fully-integrated, unambiguous contract enforceable on its plain terms and that, consistent with those terms, there are no additional, oral, or other agreements pertaining to the PLA including any unstated or "hidden" consideration;

b.  an award of damages from Huawei resulting from its breach of contract including, but not limited to all of its attorney fees in the arbitration, all of its attorney fees in this matter, damages for loss of its expectation and reliance interests resulting from the PLA, indemnification and reimbursement for all amounts of damages, if any, awarded in the arbitration, and damages for loss of business reputation for ECT;

c.  an award to ECT of all of its taxable or recoverable costs;

d.  an award of attorney's fees as permitted by law; and

e.  all such other and further relief, whether legal, equitable, or otherwise, to which ECT may be entitled or which this Court may order.

Dated:  March 6, 2026.

Respectfully submitted,


*/s/ Deron R. Dacus*
Deron R. Dacus
Texas Bar No. 00790553
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
903-705-1117 (phone)
E-mail: ddacus@dacusfirm.com

ATTORNEYS FOR PLAINTIFF

`