**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **EVS CODEC TECHNOLOGIES, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | **CASE NO. 2:26-CV-183-JRG** |
| **HUAWEI DEVICE (SHENZHEN) CO., LTD.,** | § | |
| and **HUAWEI DEVICE (DONGGUAN) CO.,** | § | |
| **LTD.,** | § | |
| | § | |
| *Defendants.* | § | |

**HUAWEI'S MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT .......... 2

III. RELEVANT FACTS AND PROCEDURAL HISTORY .......... 2

IV. ARGUMENT AND AUTHORITIES .......... 4

A. ECT failed to adequately plead facts supporting the existence of this Court's subject-matter jurisdiction. .......... 4

1. The First Amended Complaint fails to demonstrate diversity jurisdiction. .......... 4

2. The First Amended Complaint fails for ripeness. .......... 7

B. ECT's breach-of-contract action fails to state a claim upon which relief can be granted. .......... 11

1. ECT fails to identify any duties that Huawei allegedly breached. .......... 11

2. ECT's disbelief of its own allegations defeats the plausibility of its claims. .......... 14

3. ECT's damages allegations are conclusory and must fail. .......... 15

4. The statute of limitations bars this suit. .......... 17

C. ECT's request for declaratory judgment fails. .......... 18

V. CONCLUSION .......... 20

CERTIFICATE OF SERVICE .......... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accardo v. Am. First Lloyds Ins. Co.*,
No. 4:11-cv-008, 2012 U.S. Dist. LEXIS 62181 (S.D. Tex. May 3, 2012)....10

*Alavi v. Hudson Excess Ins*.,
No. 2:26-cv-022-JRG, ECF No. 60 (E.D. Tex., Aug. 11, 2026) ....4

*Alvarado v. PennyMac Loan Servs., LLC*,
No. 5:24-cv-150-XR, 2024 U.S. Dist. LEXIS 71880 (W.D. Tex. Apr. 18, 2024) ....12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....12, 15

*Askanase v. Fatjo*,
130 F.3d 657 (5th Cir. 1997) ....16

*Basic Capital Mgmt. v. Dynex Commercial, Inc.*,
348 S.W.3d 894 (Tex. 2011)....15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....14

*Chhim v. Univ. of Tex. at Austin*,
836 F.3d 467 (5th Cir. 2016) ....11, 12

*Cloud Byte LLC v. Dell Inc*.,
No. 2:24-cv-637-JRG, 2026 U.S. Dist. LEXIS 19777 (E.D. Tex. Jan. 29, 2026)....18, 19, 20

*Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*,
915 F.2d 167 (5th Cir. 1990) ....9, 18

*Columbia Hosp. at Med. City of Dallas Subsidiary, L.P. v. Cal. Physicians' Serv.*,
No. 4:24-cv-924-ALM, 2025 U.S. Dist. LEXIS 161298 (E.D. Tex. Aug. 20, 2025)....5

*Dealer Comput. Servs. v. Randall Ford, Inc*.,
No. 4:08-cv-2033, 2009 U.S. Dist. LEXIS 8242 (S.D. Tex. Feb. 4, 2009)....11

*Ericsson Inc. v. Apple Inc.*,
No. 2:21-cv-376-JRG, 2022 U.S. Dist. LEXIS 238090 (E.D. Tex. Mar. 23, 2022)....8, 9, 19

*Ferrari v. Francis*,
732 F. Supp. 3d 650 (N.D. Tex. 2024) ....6, 7

*Forest Oil Corp. v. McAllen*,
268 S.W.3d 51 (Tex. 2008)....................14

*Garza v. Citimortgage, Inc.*,
No. 5:19-cv-816-OLG, 2019 U.S. Dist. LEXIS 199468 (W.D. Tex. Aug. 29, 2019)............12

*Giannakos v. M/V Bravo Trader*,
762 F.2d 1295 (5th Cir. 1985) ....................4, 5

*Graves v. Logan*,
404 S.W.3d 582 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ....................12

*Howery v. Allstate Ins. Co.*,
243 F.3d 912 (5th Cir. 2001) ....................4

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
407 F. Supp. 3d 631 (E.D. Tex. 2019) (Gilstrap, J.)....................9

*Italian Cowboys Partners, Ltd. v. Prudential Ins. Co. of Am.*,
341 S.W.3d 323 (Tex. 2011)....................13

*Lodsys Grp., LLC v. Brother Int'l Corp.*,
No. 2:11-cv-090-JRG, 2013 U.S. Dist. LEXIS 136315 (E.D. Tex. Sep. 24, 2013) ..................9

*Lopez v. City of Houston*,
617 F.3d 336 (5th Cir. 2010) ....................8, 10

*Mead v. Johnson Group, Inc.*,
615 S.W.2d 685 (Tex. 1981)....................15

*Megalomedia Inc. v. Philadelphia Indem. Ins. Co.*,
115 F.4th 657 (5th Cir. 2024) ....................5

*Miller v. CitiMortgage, Inc.*,
970 F. Supp. 2d 568 (N.D. Tex. 2013) ....................9

*Mullins v. TestAmerica Inc.*,
564 F.3d 386 (5th Cir. 2009) ....................5

*Okpalobi v. Foster*,
244 F.3d 405 (5th Cir. 2001) ....................18

*Orix Credit All., Inc. v. Wolfe*,
212 F.3d 891 (5th Cir. 2000) ....................9

*Pace v. Cirrus Design Corp.*,
No. 2:24-cv-539-JRG, 2026 U.S. Dist. LEXIS 156407 (E.D. Tex. July 14, 2026)................17

*Pillar Pan., S.A. v. Delape*,
326 F. App'x 740 (5th Cir. 2009) ....10

*Settlement Funding, LLC v. Rapid Settlements, Ltd.*,
851 F.3d 530 (5th Cir. 2017) ....5

*Seureau v. ExxonMobil Corp.*,
274 S.W.3d 206 (Tex. App. 2008—Houston [14th Dist.], no pet. h.) ....17

*Shumylo v. Tex. Instruments Inc.*,
No. 3:25-cv-3400-D, 2026 U.S. Dist. LEXIS 145639 (N.D. Tex. Jul. 1, 2026) ....16

*Spring Window Fashions Div., Inc. v. Blind Maker, Inc.*,
184 S.W.3d 840 (Tex. App.—Austin 2006, pet. granted, jdmt vacated w.r.m.) ....13

*St. Paul Ins. Co. v. Trejo*,
39 F.3d 585 (5th Cir. 1994) ....19, 20

*Stafford v. Mobile Oil Corp.*,
945 F.2d 803 (5th Cir. 1991) ....4, 5

*Thanksgiving Tower Partners v. Anros Thanksgiving Partners*,
64 F.3d 227 (5th Cir. 1995) ....12

*Torch, Inc. v. LeBlanc*,
947 F.2d 193 (5th Cir. 1991) ....18

*Total Gas & Power N. Am., Inc. v. FERC*,
859 F.3d 325 (5th Cir. 2017) ....7, 8, 9

*United Transp. Union v. Foster*,
205 F.3d 851 (5th Cir. 2000) ....8

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) ....18

**Statutes**

Texas Declaratory Judgment Act or the federal Declaratory Judgment Act, 28 U.S.C. § 2201 ....8

**Other Authorities**

5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004) ....14

Fed. R. Civ. P. 11(b) ....10

Fed. R. Civ. P. 11(b)(3) ....10

Fed. R. Civ. P. 12(b)(1) ....1, 2, 14, 18

Fed. R. Civ. P. 12(b)(6)........................................................................................................ *passim*

U.S. Constitution..........................................................................................................7, 9

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendants (collectively "Huawei") move to dismiss the First Amended Complaint ("FAC") because it lacks virtually any of the hallmarks of a viable federal complaint.

It fails under Federal Rule of Civil Procedure 12(b)(1) to establish diversity jurisdiction because it fails to demonstrate the parties' diversity of citizenship or the amount in controversy; it also fails to show a justiciable controversy and therefore is unripe.

It fails under Rule 12(b)(6) because it identifies no duties that Huawei allegedly breached under the applicable agreement; it expresses disbelief of its own allegations, which defeats the plausibility of its claims; it lacks sufficient information related to damages, including any allegations establishing that the damages were foreseeable or directly traceable to Huawei; and it cannot overcome the four-year statute of limitations applicable to Texas breach-of-contract claims.

For these reasons, Huawei respectfully requests that the Court dismiss this case.

## I. INTRODUCTION

The FAC is unusual, to say the least. First, Plaintiff EVS Codec Technologies, LLC ("ECT") filed an FAC that is incomplete at the most basic level, failing to allege the citizenship of any members of the LLC and failing to demonstrate an amount in controversy exceeding $75,000—both requisites for this Court to determine whether it has diversity jurisdiction. Second, the FAC is strikingly vague: It alleges that Huawei might have breached the merger and disclaimer-of-reliance clauses in a Patent License Agreement ("PLA") between ECT and Huawei, as evidenced by alleged mention of an extra-contractual term to an unidentified "third party," which then resulted in an arbitration action between ECT and the third party involving unidentified claims. Third, the FAC questions its own factual allegations: It expressly states that ECT "very

much doubts" that the statements were made to the third party about a contract term outside the PLA and therefore doubts that Huawei breached the PLA.[1] (ECF No. 3 ¶ 16.)

As this synopsis shows, this is not a lawsuit in any viable sense, and this Court can easily dismiss it for lack of subject-matter jurisdiction and because ECT fails to state a claim upon which relief can be granted.

## II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

A. Must this Court dismiss ECTs' claims under Rule 12(b)(1) because (1) ECT, an LLC, failed to demonstrate diversity jurisdiction when it failed to adequately plead the citizenship of any of its members and the amount in controversy; and (2) the claims are unripe as they depend on hypothetical future events?

B. Must this Court dismiss ECT's claims under Rule 12(b)(6) because (1) ECT failed to allege that Huawei breached any contract terms; (2) ECT expressly stated that it "very much doubts" that the alleged events giving rise to its lawsuit occurred; (3) ECT's damages allegations are conclusory and fail to establish that Huawei could have foreseen the claimed damages or that the damages were directly traceable to Huawei's conduct; and (4) the statute of limitations bars this claim?

## III. RELEVANT FACTS AND PROCEDURAL HISTORY

ECT, a Texas limited liability company comprised of unknown members, filed its Original Complaint against Huawei on March 6, 2026. (ECF No. 1.) It filed its FAC on March 27, 2026. (ECF No. 3.) The suit allegedly relates back to a patent-infringement suit filed eight years ago in this Court, which the parties resolved in 2019. (*Id.* ¶ 11.) A few months later, ECT and Huawei

---

[1] At this early stage, Huawei neither admits nor denies the substance of ECT's allegations as to the third-party statements because, as Huawei demonstrates, this Court lacks subject-matter jurisdiction over this case, and ECT has failed to state any claim on which relief can be granted.

entered into the PLA in March 2020. (*Id.* ¶ 12.) The FAC states that Huawei satisfied its obligation to ECT under the PLA by "pay[ing] the cash consideration specified in the PLA." (*Id.* ¶ 13.)

ECT is now engaged in arbitration proceedings that do not involve Huawei. (*Id.* ¶ 16.) ECT's adversary in the arbitration—a third party whom the FAC fails to identify—claimed that someone told this third party that "Huawei paid consideration outside of, and in addition to, what is explicitly contained in the PLA." (*Id.*) Apparently, the third party might have brought one or more claims against ECT in the arbitration related to this claim to recoup some of this purported consideration. The FAC expressly states that ECT considers the third party's position (that those statements were made to the third party) "conclusory," "groundless," and "repeatedly contradicted by the express provisions of the PLA." (*Id.*) In fact, ECT "very much doubts" that these purported statements were made. (*Id.*)

Nevertheless, the FAC alleges that, if those statements were made and Huawei did, in fact, rely on an extra-contractual term, Huawei breached the PLA's merger and disclaimer-of-reliance clauses, both of which state that the parties did not rely on any terms outside of the PLA's four corners. (*Id.* ¶ 23.) The FAC further claims that this alleged (but "doubt[ful]") breach harmed ECT because it has incurred, and continues to incur, attorneys' fees and costs to defend itself in the ongoing arbitration, and it also might be required to pay the third party money if the arbitration resolves contrary to ECT's position or if ECT and the third party enter into a settlement agreement. (*Id.*)

The FAC does not, however, identify any specific amount of damages or any damages that are not purely speculative. In fact, ECT cannot estimate damages at this point because the arbitration proceeding is ongoing. Nor does the FAC adequately allege that the damages were foreseeable or directly traceable to Huawei as opposed to traceable to ECTs' own alleged actions

in relation to the third party. A Joint Motion to Abate recently filed in another case related to the arbitration notes that the arbitration hearing concluded on June 29, 2026, and post-hearing briefs are due September 21, 2026, with rebuttal briefs due a few weeks later. *See Alavi v. Hudson Excess Ins.*, No. 2:26-cv-022-JRG, ECF No. 60 (E.D. Tex., Aug. 11, 2026). Thus, "[t]he arbitration panel is not expected to issue an award until December, . . . no settlement has been reached[,] . . . [and] the full scope of . . . damages has not yet been fully determined." (*Id.* at 2.)

## IV. ARGUMENT AND AUTHORITIES

### A. ECT failed to adequately plead facts supporting the existence of this Court's subject-matter jurisdiction.

#### 1. The First Amended Complaint fails to demonstrate diversity jurisdiction.

First, this Court should dismiss the FAC for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). This Court presumes that a suit lies outside of its limited jurisdiction unless and until the party seeking the federal forum establishes that federal jurisdiction is proper. *Id.* Of course, one way a party can invoke this Court's jurisdiction is by demonstrating complete diversity among the parties. To do so, the amount in controversy must exceed $75,000, and "the citizenship of all of the plaintiffs must be different from the citizenship of all of the defendants." *Stafford v. Mobile Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991). Because the Huawei Defendants are based in China, if any of the members of ECT are foreigners, the Court would lack diversity jurisdiction. *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1298 (5th Cir. 1985) ("Diversity does not exist where aliens are on both sides of the litigation."). Here, ECT has established neither its members' citizenship or the amount in controversy; therefore, this Court lacks subject-matter jurisdiction over this case.

##### a. ECT failed to meet its burden of demonstrating the citizenship of its LLC members.

The party seeking to invoke a court's diversity jurisdiction bears the burden of demonstrating complete diversity. *Id*. To do so, the party must distinctly and affirmatively plead each party's citizenship. *Id*. at 804-05. For LLCs, this means that the party asserting diversity jurisdiction must allege the citizenship of each of the LLC's members. *Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017). Further, "[w]hen partners or members of an LLC are themselves entities or associations, each layer of members or partners must be traced until one arrives at an individual or entity not a partnership or LLC." *Columbia Hosp. at Med. City of Dallas Subsidiary, L.P. v. Cal. Physicians' Serv.*, No. 4:24-cv-924-ALM, 2025 U.S. Dist. LEXIS 161298, at *9 (E.D. Tex. Aug. 20, 2025); *see Mullins v. TestAmerica Inc.*, 564 F.3d 386, 397-98 (5th Cir. 2009) (discussing the need to "further trac[e] [entities'] citizenships down the various organizational layers where necessary"). Failure to do so mandates dismissal. *Stafford*, 945 F.2d at 805.

Here, the FAC exclusively relies on diversity to establish federal subject-matter jurisdiction. (ECF No. 3 ¶ 4.) And yet ECT, which holds itself out to be a Texas LLC, failed to plead the citizenship of any of its members. (*Id.* ¶ 1.) Instead, it simply alleges that its principal place of business is in Humble, Texas. (*Id.*)

ECT's allegations are legally insufficient to invoke this Court's jurisdiction; indeed, ECT's principal place of business is wholly irrelevant. *Megalomedia Inc. v. Philadelphia Indem. Ins. Co.*, 115 F.4th 657, 660 (5th Cir. 2024) ("Here, the complaints alleged only where the LLC parties were 'doing business' and had their 'principal place of business.' The latter allegation is relevant to the citizenship of a corporation, but neither allegation is relevant to an LLC's citizenship." (internal citation omitted)); *See also, Colombia Hosp.*, 2025 U.S. Dist. LEXIS 161298, at *10 (finding "[a] limited partnership's principal place of business is not relevant and has no bearing on

the citizenship of the partnership or its individual partners”). Because ECT has failed to allege its members’ citizenship, it has failed to establish diversity jurisdiction.

**b. ECT failed to meet the amount-in-controversy requirement.**

A “plaintiff filing a case in federal court and invoking . . . diversity jurisdiction must establish that ‘the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.’” *Ferrari v. Francis*, 732 F. Supp. 3d 650, 652 (N.D. Tex. 2024) (Horan, M.J.) (quoting 28 U.S.C. § 1332(a)). When, as here, the plaintiff “has provided only ‘bare allegations of jurisdictional facts’ (that is, ‘merely stat[ing], without any elaboration, that the matter [or amount] in controversy exceeds’ $75,000),” it “‘must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.’” *Id*. (quoting *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 & nn.12-13 (5th Cir. 1998)). And the applicable “‘test is whether it is more likely than not that the amount of the claim will exceed’ $75,000.” *Id*. at 654 (quoting *Greenberg*, 134 F.3d at 1253 & n.13). “To assess whether the plaintiff has met this burden,” the court “first looks to the facts that the plaintiff pleaded in the complaint and determines whether it is apparent from the face of the complaint that the amount of damages or value of the claims more likely than not exceed[s] $75,000.” *Id*. at 655.

The FAC fails this test. In the “Jurisdiction and Venue” section, it alleges the “bare allegations of jurisdictional facts”—that “the amount in controversy exceeds $75,000.” (ECF No. 3 ¶ 4.) Yet it is far from apparent from the FAC’s face that the amount of damages or value of the claims more likely than not exceeds $75,000. In fact, the opposite is clear—that the damages amount or value of the claims is speculative because it is based on possible future events, including whether ECT loses the arbitration proceeding. (*Id*. ¶ 4.) For instance, later in the FAC, ECT alleges that it “has incurred, and will continue to incur, millions of dollars of fees and expenses to defend

itself" in the arbitration, (*id.* ¶ 17), but the arbitration has not yet concluded, which means it is unclear whether ECT will be responsible for its own costs and fees or whether the third party will if ECT prevails. And, even to this day, Huawei has little visibility regarding the claims made in the arbitration or how the alleged statements to the third party may have factored into it. For example, the FAC does not make clear which party initiated the arbitration proceeding, how many claims or counterclaims are at issue, how many of those claims concern issues related to any alleged statements, or the amount of any damages that ECT believes would be attributable to *Huawei's* alleged conduct if the third party prevailed in the proceeding. Thus, at best, ECT alleges "only an indeterminate amount of [potential] damages." *Ferrari*, 732 F. Supp. 3d at 655.

Given that the FAC does not establish damages or a claim value exceeding $75,000, ECT must provide "summary judgment-type evidence that must be relevant at the time that the plaintiff filed the complaint and that must set forth the facts in controversy that support a finding that the amount of damages or the value of the claims more likely than not exceed[s] $75,000." *Id.* Huawei predicts that ECT cannot do this because, when ECT filed this action in March 2026, the arbitration hearing had not concluded—and post-hearing briefing is still underway as of today. Therefore, it is simply impossible at this point for ECT to produce evidence that, "more likely than not," "the amount of the claim will exceed $75,000." *Id.* at 654. For this additional reason, ECT has failed to establish diversity jurisdiction.

**2. The First Amended Complaint fails for ripeness.**

Alternatively, this Court should dismiss the FAC because it is unripe. "The ripeness requirement originates from Article III of the United States Constitution, which provides that federal courts have jurisdiction over 'cases' or 'controversies.'" *Total Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 333 (5th Cir. 2017) (quoting U.S. Const. art. III, § 2). "[R]ipeness . . . determine[s] when . . . litigation may occur. Specifically, the ripeness doctrine seeks to separate

matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." *Id*. (internal quotation marks omitted).

"A case is justiciable when it is 'definite and concrete' and 'real and substantial.'" *Ericsson Inc. v. Apple Inc.*, No. 2:21-cv-376-JRG, 2022 U.S. Dist. LEXIS 238090, at *14 (E.D. Tex. Mar. 23, 2022) (quoting *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019)). To determine whether a plaintiff's claims are ripe, and therefore justiciable, courts analyze "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). A claim is abstract or hypothetical, and therefore unripe for adjudication, if the alleged injury is "'contingent on future events that may not occur as anticipated, or indeed may not occur at all.'" *Id*. (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). Because courts have no power to decide unripe disputes, a case lacking ripeness must be dismissed for lack of subject-matter jurisdiction. *Id*. "The ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Total Gas*, 859 F.3d at 333.

The ripeness requirement applies both to ECT's breach-of-contract claim and its declaratory-judgment request. *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) ("Although a declaratory judgment action is often brought before injury has occurred, it is nevertheless subject to the ripeness requirement."). Given the FAC's cursory nature, it does not state whether ECT is seeking relief under the Texas Declaratory Judgment Act or the federal Declaratory Judgment Act ("FDJA"), 28 U.S.C. § 2201. But this Court must apply the FDJA "because declaratory judgment is procedural, not substantive, and federal courts apply their own

procedural rules." *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 591 (N.D. Tex. 2013) (Horan, M.J.).

A court's ability to issue a declaratory judgment "'presupposes the existence of a judicially remedial right.'" *Id*. (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). Under both the U.S. Constitution and FDJA, "[a] declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists"; "[a]s a general rule, [one] exists where a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Total Gas & Power*, 859 F.3d at 333 (internal quotation marks and citations omitted); *see Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990) (same). The "controversy" must necessarily be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." *Lodsys Grp., LLC v. Brother Int'l Corp.*, No. 2:11-cv-090-JRG, 2013 U.S. Dist. LEXIS 136315, at *19-20 (E.D. Tex. Sep. 24, 2013) (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 325 (1936)); *see also HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 407 F. Supp. 3d 631, 635 (E.D. Tex. 2019) (Gilstrap, J.) (same).[2]

Here, ECT's breach-of-contract and declaratory-judgment claims fail under both the fitness and hardship prongs of the ripeness inquiry. First, the case is unfit for judicial resolution because ECT bases the FAC on an abstract or hypothetical claim that someone *might* have made the alleged statements to the unidentified third party and, if so, that would allegedly demonstrate a breach of the PLA. The FAC itself states that ECT bases this tentative claim on a "conclusory" allegation

[2] This Court specifically "applies the *Orix* test when determining declaratory judgment jurisdiction." *Ericsson Inc.*, 2022 U.S. Dist. LEXIS 238090, at *14 (citing *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)). In doing so, "the Court determines: (1) whether the declaratory action is justiciable; (2) whether the Court has authority to grant declaratory relief; and (3) whether to exercise its discretion to decide to dismiss the action." *Id.* As explained above, ECT's declaratory request is nonjusticiable. And as explained in Section IV.C., even if this Court were to conclude that the action is justiciable, it should exercise its discretion to dismiss it.

the third party has made in the arbitration; ECT considers the third party's claim to be "groundless"; and ECT "very much doubts" that the statement in question was made. (ECF No. 3 ¶ 16.)

Notably, these allegations do not conform to Rule 11(b), which requires an attorney to "certif[y] to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). ECT's allegations turn this requirement on its head because the FAC states the opposite—that ECT considers its factual contentions about the alleged statements to the third party to be *untrue*. The FAC's convoluted, contradictory allegations demonstrate that the case is unfit for this Court's consideration.

Relatedly, the case is unfit for judicial resolution because ECT's alleged damages are "contingent upon future events that may not occur as anticipated, or indeed may not occur at all." *Lopez*, 617 F.3d at 341. ECT alleges that its damages are the fees and expenses necessary to defend itself in the arbitration and any potential judgment or agreement with the third party "regardless of how baseless or improper such a judgment would be or how harassing any such agreement would be." (ECF No. 3 ¶ 17.) But according to the FAC, the arbitration has not yet reached resolution, and therefore the alleged damages are speculative. For example, the arbitration could end in a judgment in ECT's favor with an award for all attorneys' fees and costs associated with its defense in the arbitration. Accordingly, for this second reason, ECT's claim is unfit for judicial resolution. *See Pillar Pan., S.A. v. Delape*, 326 F. App'x 740, 743 (5th Cir. 2009) (finding a case unripe and dismissal proper in an action where the question at issue necessitated a finding on a related issue that was being adjudicated in a separate legal proceeding); *see also Accardo v. Am. First Lloyds Ins. Co.*, No. 4:11-cv-008, 2012 U.S. Dist. LEXIS 62181, at *6-10 (S.D. Tex. May 3, 2012) (same).

Second, declining consideration would cause no hardship to the parties because, even taking the FAC's claims as true, ECT has not suffered "some immediate concrete injury" that this Court must address at this time. *Dealer Comput. Servs. v. Randall Ford, Inc.*, No. 4:08-cv-2033, 2009 U.S. Dist. LEXIS 8242, at *8 (S.D. Tex. Feb. 4, 2009). The FAC identifies no such "immediate and concrete" injury; rather, it *doubts* that any injury took place. And, even assuming it did identify an alleged injury, as stated above, ECT's purported damages are purely speculative at this point. As a result, declining consideration at this time will not result in any cognizable hardship to ECT, and this Court should dismiss the FAC as unripe.

**B. ECT's breach-of-contract action fails to state a claim upon which relief can be granted.**

If this Court were to conclude that it has jurisdiction over this case and proceeds to a Rule 12(b)(6) analysis, it should grant dismissal because ECT has failed to state a claim for four independent reasons: (1) the FAC fails to identify any duties under the PLA that Huawei allegedly breached; (2) ECT's disbelief of its own allegations defeats the plausibility of its claims; (3) the FAC fails to sufficiently plead damages because it does not allege that any claimed damages were foreseeable or directly traceable to Huawei; and (4) the four-year statute of limitations bars the claims.

**1. ECT fails to identify any duties that Huawei allegedly breached.**

"Under the Federal Rules of Civil Procedure and relevant precedent, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must show "'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts "take the well-pleaded factual allegations in the complaint as true, but [they]

do not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Id.* (citing *Iqbal*, 556 U.S. at 678). Dismissal is required when a complaint fails to state enough facts to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Graves v. Logan*, 404 S.W.3d 582, 584 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (internal quotation marks omitted). To state a claim for breach of contract, a plaintiff must identify specific provisions of the contract that a defendant allegedly breached. *Garza v. Citimortgage, Inc.*, No. 5:19-cv-816-OLG, 2019 U.S. Dist. LEXIS 199468, at *5 (W.D. Tex. Aug. 29, 2019) (citing *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014)). Texas state courts, and federal courts applying Texas law, routinely dispose of breach-of-contract actions where the contract did not create the obligations made the basis of the lawsuit. *See, e.g.*, *Thanksgiving Tower Partners v. Anros Thanksgiving Partners*, 64 F.3d 227, 230 (5th Cir. 1995) (affirming summary judgment dismissing breach-of-contract claim where the plaintiff was "unable to cite any language in the contract" imposing the duties that were allegedly violated); *Alvarado v. PennyMac Loan Servs., LLC*, No. 5:24-cv-150-XR, 2024 U.S. Dist. LEXIS 71880, at **7-8 (W.D. Tex. Apr. 18, 2024) (finding that "Plaintiff's breach of contract claim must fail because he has not identified a specific contractual provision that was allegedly breached").

ECT has failed to identify any duties Huawei had under the PLA that Huawei violated by an alleged mention of the existence of an extra-contractual term to the third party and/or allegedly relying on that term. First, the FAC points to the PLA's merger clause, which provides that "[t]his Agreement and any Appendices constitute the entire agreement between the Parties and supersedes all prior written and oral agreements with respect to the subject matter hereof." (ECF No. 3 ¶ 14.)

But by its own terms, this clause creates no affirmative obligation. Rather, it would simply support a defense if Huawei (or ECT) attempted (or threatened) to enforce a term outside the PLA's four corners.

Second, ECT points to a disclaimer-of-reliance clause, which it claims provides that Huawei "represent[ed] and warrant[ed] that in executing [the PLA], it does not rely on any promises, inducements or representations made by any person, whether a Party to this agreement or otherwise, with respect to this Agreement or any other business dealing with any person, whether or not a Party to this Agreement, now or in the future." (*Id*. ¶ 15.) Again, this clause does not prohibit making the alleged statements to the third party. Like the merger clause, the only way this clause would come into effect is if Huawei (or ECT) attempted (or threatened) to enforce an extra-contractual term.

In fact, the undersigned counsel cannot locate any Texas cases recognizing an independent claim for breach of a merger or disclaimer-of-reliance clause based solely on later statements to a third party that are allegedly inconsistent with such terms. Rather, Texas law consistently characterizes these clauses as rules governing contract integration and fraudulent-inducement defenses—not as continuing affirmative covenants. *See, e.g.*, *Italian Cowboys Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 334 (Tex. 2011) ("[Standard merger clauses] achieve[] the purpose of ensuring that the contract at issue invalidates or supersedes any previous agreements, as well as negating the apparent authority of an agent to later modify the contract's terms");[3] *Spring Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 870 (Tex. App.—Austin 2006, pet. granted, jdmt vacated w.r.m.) ("A merger clause . . . memorializes the

[3] Notably, ECT does not allege that Huawei tried to modify the contract's terms. Even if ECT did make such an allegation, the merger clause may be a defense to enforcement, but it does not create an independent cause of action for breach of contract.

parties' intent to integrate or absorb their prior negotiations, agreements, or understandings concerning the same subject matter into a subsequent written contract."); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008) (finding that a disclaimer-of-reliance clause may be effective to negate the reliance element of a fraudulent-inducement claim).

In sum, the FAC fails to identify any provisions that were purportedly violated by the alleged conduct. Even if a merger clause and/or a disclaimer-of-reliance clause creates affirmative, ongoing obligations that could form the basis of a breach-of-contract action (which they do not), ECT has not alleged any conduct to suggest these provisions were violated. ECT does not allege, for example, that Huawei (1) attempted to enforce an oral or written side agreement, (2) refused to perform the PLA because of a side agreement, (3) sued for fraudulent inducement based on extra-contractual representations, or (4) sought contractual relief based on the alleged hidden consideration. ECT simply claimed that it learned someone may have made some statements about the PLA, and those statements, if made, were allegedly incorrect or might indicate that Huawei relied on a term outside the PLA's four corners for which Huawei has never sought enforcement. (ECF No. 3 ¶ 16.) These allegations, standing alone, do not support a cause of action for breach of contract, and the Court should dismiss this claim.

**2. ECT's disbelief of its own allegations defeats the plausibility of its claims.**

Similar to this Court's ripeness analysis under Rule 12(b)(1), to conclude that the FAC survives Rule 12(b)(6), the Court must identify "[f]actual allegations" that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also* 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."). The Supreme Court has described this "facial plausibility" standard as less than probable but necessarily more than possible:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted).

In the FAC, ECT pleaded uncertainty and doubt where it was required to plead facts. ECT expressly states that its claims rely on a third party's "conclusory" statement, and ECT considers the substance of this alleged statement to be "groundless" and "repeatedly contradicted by the express provisions of the PLA[.]" (ECF No. 3 ¶ 16.) In fact, ECT "very much doubts" that someone made these purported statements. (*Id.*) In this way, the FAC itself *actively prevents* this Court from finding that the FAC "raise[s] a right to relief above the speculative level."

If this all sounds nonsensical, that is because it is. Even though the Supreme Court has made clear that a complaint is insufficient if it does no more than "plead[] facts that are *merely consistent* with a defendant's liability," *Iqbal*, 556 U.S. at 678 (emphasis added), the FAC does not even do that—instead, pleading facts that are *blatantly inconsistent* with Huawei's liability. Because the FAC cannot meet the plausibility standard, this Court should grant the Rule 12(b)(6) motion.

**3. ECT's damages allegations are conclusory and must fail.**

To recover damages on a breach-of-contract claim, a plaintiff must establish that the alleged damages are the natural, probable, and foreseeable consequence of the defendant's conduct. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981). Further, Texas law requires consequential damages be "directly traceable to the wrongful act and result from it." *Basic Capital Mgmt. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex. 2011). "[E]ven if the injury would not have happened but for the defendant's conduct, the connection between the defendant

and the plaintiff's injuries may be too attenuated to constitute legal cause." *Shumylo v. Tex. Instruments Inc.*, No. 3:25-cv-3400-D, 2026 U.S. Dist. LEXIS 145639, at *24 (N.D. Tex. Jul. 1, 2026) (quoting *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)); *see also Askanase v. Fatjo,* 130 F.3d 657, 676 (5th Cir. 1997) ("Under Texas law, a cause of action is legally insufficient if the defendant's alleged conduct did no more than furnish the condition that made the plaintiff's injury possible.").

ECT fails to allege facts supporting foreseeability. Specifically, it fails to allege any facts supporting that, when Huawei entered into the PLA, Huawei would have foreseen that—years later—when someone allegedly told a third party about an extra-contractual term, the third party would then engage ECT in arbitration related to that term, causing ECT to incur related costs and fees and potentially be liable for an unspecified amount of damages. Similarly, the FAC fails to demonstrate how these alleged damages were "directly traceable" to any Huawei conduct. ECT claims that the alleged disclosure of the extra-contractual term resulted in the third party's unidentified claim against it in the arbitration and therefore Huawei should fully indemnify it for any losses it might incur in the arbitration, as well as pay it "damages for loss of its expectation and reliance interests resulting from the PLA" and "for loss of business reputation for [ECT]." (ECF No. 3 ¶ 16.) Whatever ECT or the third party allegedly did that caused those parties to enter into arbitration was due to conduct on one or the other's part, not Huawei's, as evidenced by the fact that Huawei *is not involved in the arbitration.* Thus, these damages are directly traceable to, and resulting from, the actions of ECT and/or ECT's opponent in the arbitration proceeding (depending on which one prevails in the arbitration), not Huawei. Consequently, ECT has failed to state a claim for breach of contract.

**4. The statute of limitations bars this suit.**

"'[A] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.'" *Pace v. Cirrus Design Corp.*, No. 2:24-cv-539-JRG, 2026 U.S. Dist. LEXIS 156407, at *5 (E.D. Tex. July 14, 2026) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)). "In such a case, the plaintiff bears the burden to establish why the statutory limitations period should be tolled." *Id.* (citing *Weaver v. Witt*, 561 S.W.2d 792, 794, n.2 (Tex. 1977)).

ECT brought its breach-of-contract claim over four years after the alleged breach occurred, and therefore the statute of limitations requires dismissal. *See Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 227 (Tex. App. 2008—Houston [14th Dist.], no pet. h.) ("[T]he statute of limitations for breach-of-contract actions is four years from the date of accrual."). Here, the alleged breach—Huawei's claimed reliance on a term outside the PLA's four corners—would have occurred at the time it executed the PLA, not at the time the third party was allegedly told about the term. Thus, the cause of action began to accrue in March 2020. (ECF No. 3 ¶ 12.) ECT filed the instant case on March 6, 2026—six years after the PLA's execution. (ECF No. 1.)

ECT might argue that the claim did not begin accruing until the arbitration, when ECT alleges that it learned of the potential statement to the third party about the purported extra-contractual term. But the FAC implies that Huawei agreed to the alleged extra-contractual term *with ECT* and, based on that term, provided alleged additional consideration *to ECT* before or at the time the PLA was executed in March 2020, and that the third party (*not* ECT) was unaware of this term until the third party was allegedly told about that term years later. (*Id.* ¶¶ 13-17.) Because ECT therefore would have known of the alleged term, at the latest, at the time of the PLA's execution in March 2020, it cannot show that it discovered the alleged breach (Huawei's alleged reliance on this term) only years later.

For each of these reasons, this Court must dismiss ECT's breach-of-contract claim under Rule 12(b)(6).

**C. ECT's request for declaratory judgment fails.**

The declaratory-judgment request fails under Rule 12(b)(6) for virtually the same reasons that it failed under Rule 12(b)(1). First, it is not a stand-alone claim, and ECT fails to identify a viable cause of action relating to it. *See, e.g.*, *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001) ("[The FDJA] does not provide an additional cause of action with respect to the underlying claim."). Second, ECT has failed to identify an "adverse legal interest within the meaning of the" FDJA. *Collin Cty.*, 915 F.2d at 170. The FAC claims that ECT's interests are potentially adverse to Huawei's because ECT does not believe it paid any additional consideration to Huawei pursuant to a term outside the PLA's four corners. But if the third party's alleged statement to ECT was correct that someone said Huawei paid additional consideration related to the PLA, Huawei shares a different view of the PLA and surrounding negotiations. (ECF No. 1 ¶ 20.) In other words, ECT's allegations suggest that a plaintiff could bring a federal declaratory judgment action any time two parties allegedly might share differing views as to the scope of a contract. This is simply incorrect. "[I]t is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action[.]" *Id.* at 171. Here, ECT identifies no cause of action Huawei has threatened to bring against it for breach of contract, fraudulent inducement, or any other claim related to the PLA. Thus, the FAC lacks any allegation as to a cognizable "adverse legal interest." (*See supra* Section IV.A.2.)

Alternatively, the Court should decline to exercise its "broad" discretion to entertain the declaratory-judgment request. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (discussing the "unique breadth" of a federal court's "discretion to decline to enter a declaratory judgement"); *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991); *see Cloud Byte LLC v. Dell Inc.*, No.

2:24-cv-637-JRG, 2026 U.S. Dist. LEXIS 19777, at *5-6 (E.D. Tex. Jan. 29, 2026) (stating same). "In deciding whether to decide or dismiss a declaratory action, [this] Court looks to the *Trejo* factors." *Ericsson Inc.*, 2022 U.S. Dist. LEXIS 238090, at *11 (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 585 (5th Cir. 1994)). These factors include:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
>
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id*. (quoting *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389-90 (5th Cir. 2003)).

Additionally, "[i]n exercising that broad discretion, [t]rial courts must determine whether hearing the case would serve the objectives for which the Declaratory Judgement Act was created, namely, allowing a party who is reasonably at legal risk because of an unresolved legal dispute[] to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Cloud Byte LLC*, 2026 U.S. Dist. LEXIS 19777, at *5-6 (internal quotation marks and citation omitted).

Here, the Court should decline to exercise its discretion under the *Trejo* factors. The first, third, fourth, sixth, and seventh factors essentially relate to whether this Court is the proper forum, whether a parallel action is ongoing elsewhere, or whether the interests of judicial economy weigh

in favor of resolution by this Court. Those factors weigh in favor of dismissal because, as the FAC makes clear, ECT and a third party are currently engaged in arbitration involving claims that concern the alleged statement to the third party. This means that (a) the two actions involve overlapping factual claims; (b) despite the fact that the arbitration commenced first, ECT is now attempting to litigate those factual claims in a different forum; and (c) ECT is asking this Court to resolve the factual claims in a way that would potentially be at odds with the forthcoming arbitration decision.

In terms of the second factor, as previously discussed, ECT did not file suit in anticipation of any lawsuit Huawei would file—Huawei has not threatened or expressed any intent to file any claims against ECT related to the PLA. For the same reason, allowing this case to proceed would not serve the FDJA's purposes because Huawei is not threatening any "commencement of legal action" against ECT, and therefore ECT is not "reasonably at legal risk" due to "an unresolved legal dispute." *Cloud Byte LLC*, 2026 U.S. Dist. LEXIS 19777, at *5-6. That leaves only the fifth factor, whether this Court is a convenient forum for the parties and witnesses, which is, at best, neutral.

Analysis of the *Trejo* factors, coupled with ECT's expressed doubt as to its own allegations, demonstrate that a declaratory judgment is simply inappropriate. For these reasons, neither ECT's breach-of-contract claim nor its declaratory judgment request should survive this Motion.

## V. CONCLUSION

ECT has failed to meet even the most basic pleading requirements, which renders the FAC defective under both Rule 12(b)(1) and (b)(6). Huawei therefore asks that this Court dismiss this action with prejudice in its entirety.

Dated: September 8, 2026

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: */s/ Christopher D. Kratovil*
**CHRISTOPHER D. KRATOVL**
Texas Bar No. 24121800
CKratovil@dykema.com
**LEIGHA SIMONTON**
Texas Bar No. 24033193
LSimonton@dykema.com
**J. SCOTT HOGAN**
Texas Bar No. 24032425
SHogan@dykema.com
**DANIEL J. HALL**
Texas Bar No. 24118946
DHall@dykema.com
Comerica Bank Tower
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401

**ATTORNEYS FOR DEFENDANTS HUAWEI DEVICE (SHENZHEN) CO., LTD. and HUAWEI DEVICE(DONGGUAN) CO., LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all parties or counsel of record via CM/ECF on September 8, 2026, in compliance with the Federal Rules of Civil Procedure.

*/s/ Christopher D. Kratovil*
Christopher D. Kratovil