IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EVS CODEC TECHNOLOGIES, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>HUAWEI DEVICE (SHENZHEN) CO., LTD., and HUAWEI DEVICE (DONGGUAN) CO., LTD.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION No. 2:26-CV-183-JRG |

**PLAINTIFF EVS CODEC TECHNOLOGIES, LLC'S RESPONSE IN OPPOSITION TO HUAWEI'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff EVS Codec Technologies, LLC ("**ECT**") files this Response in Opposition to Defendants Huawei Device (Shenzhen) Co., Ltd. and Huawei Device (Dongguan) Co., Ltd.'s (collectively, "**Huawei**") Motion to Dismiss First Amended Complaint (Dkt. No. 15) and respectfully shows as follows:

## I. INTRODUCTION

1. Huawei's Motion asks the Court to resolve factual disputes and draw inferences against ECT at the pleading stage. ECT's First Amended Complaint ("**FAC**") alleges that its opponents in a pending arbitration with St. Lawrence ("**Claimant**") have attributed specific statements to a Huawei representative concerning the consideration underlying the parties' Patent License Agreement ("**PLA**"). ECT makes those allegations because Claimant said exactly that in documents filed in the arbitration – this is not speculative. Those statements were used to support various claims against ECT in the arbitration tying the PLA to a patent sale agreement (the "**PSA**"), create fights over witness statements, require briefing and arguments related to evidentiary exclusions, and require subpoenas to deal with the disclosing witness. ECT alleges, and will prove, that it has incurred substantial fees and expenses in that process and that it never should have been

required to do so because of the PLA. The dispute therefore does not depend solely upon some future event that may never occur because the fees just for that process created by Huawei vastly exceeded $75,000.

2. The PLA also does considerably more than simply contain a generic merger clause as it was part of a settlement amongst sophisticated parties. Huawei expressly represented and warranted in § 7.5 that, in executing the PLA, it did not rely upon promises, inducements, or representations concerning the PLA or other business dealings – it was a complete deal. Section 4.1 separately states that the $6 million License Fee constitutes the "total compensation" paid by Huawei under the PLA. And §§ 12.7 and 12.8 agree that the PLA constitutes the parties' entire agreement concerning its subject matter – the settlement – and may be amended only by a written agreement of the parties. Years later, according to the Claimant in the Arbitration, Steven Geiszler ("**Geiszler**") – with Huawei – converted himself into a fact witness to provide evidence that the PLA was not the entire deal.

3. ECT alleges and offers some evidentiary evidence of Geiszler's position in this Response as a preview of coming attractions in case there is any doubt that the allegations are supported. The trial will show that the Claimant attributed statements from Geiszler to Huawei when asserting that the PSA transaction was linked to, or formed part of, the consideration for the PLA. Whether those statements were actually made and what they establish are the factual questions to be answered in the trial of this case. They are not grounds for dismissal at the pleading stage. Again, there is no doubt that the Claimant, on multiple occasions, beat their drum claiming that Geiszler was coming to testify in a manner directly adverse to the language in the PLA offering that "Geiszler has information regarding Huawei's agreements with St. Lawrence and/or CCC." As far as ECT is concerned, that was the first accrual of the breach. What is certainly to be

determined in this case are the damages for that effort by Huawei and Geiszler to retrade the deal in the PLA.

4. Huawei's jurisdictional objections likewise do not warrant dismissal with prejudice. The FAC alleges damages that exceed the jurisdictional threshold because they include millions of dollars in fees and expenses that have already been incurred in the arbitration dealing with the Geiszler/Huawei disclosure to Claimant. The $75,000 threshold is pale in comparison to what was actually incurred or the expenses for the experts that were engaged. While Huawei is right that the pleading on diversity needed some adjustment, that claimed deficiency in the pleading of ECT's LLC citizenship can be, and will be, corrected. The amendment will still show that complete diversity existed when this action was filed. In that regard, as soon as the Certificate of Conference with Huawei counsel is complete ECT will be filing its Motion for Leave to file its Second Amended Complaint.

5. Finally, Huawei repeatedly relies upon the pending AAA Arbitration to argue that ECT's claims or damages are premature but that misses the point because the damages in the form of legal fees and expert fees were already incurred in amounts well in excess of this Court's jurisdiction. With that said, if the Court concludes that completion of that proceeding would materially clarify the issues presented here, the appropriate course is a limited stay pending issuance of the arbitration award, not dismissal of ECT's claims with prejudice. The Court should be informed that final hearing materials are being filed this week and a ruling by the Panel is expected around year end. But to be clear, the damages will only increase above the attorney's fees that have already been incurred.

## II. ARGUMENT AND AUTHORITIES

### A. **The Court Has Subject-Matter Jurisdiction**.

*a. Any Deficiency in ECT's Citizenship Allegations Is Curable.*

6. Huawei first argues that ECT failed to establish diversity jurisdiction because the FAC identifies ECT as a Texas limited liability company but does not identify the citizenship of each of its members. Dkt. No. 15 at 4–6. ECT's sole member is Sewell & Associates, Inc. ("**SAI**"). SAI is incorporated in Texas and maintains its principal place of business in Humble, Texas. Accordingly, SAI is a citizen of Texas for purposes of 28 U.S.C. § 1332(c)(1), and ECT, whose sole member is SAI, is likewise a citizen of Texas for purposes of diversity jurisdiction. Going even further, the owner of SAI – David Sewell – is also a citizen of Texas and a Texas lawyer with a Texas Bar Card.

7. ECT does not dispute that the citizenship of an LLC is determined by the citizenship of each of its members. *Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017). To the extent the FAC did not adequately allege ECT's citizenship, that omission is a pleading defect that may be cured by amendment where diversity jurisdiction existed when suit was filed. See 28 U.S.C. § 1653; *Whitmire v. Victus Ltd.*, 212 F.3d 885, 887–88 (5th Cir. 2000). ECT therefore respectfully requests leave to amend its jurisdictional allegations if the Court concludes that further specificity is required. A proposed Second Amended Complaint is being filed as soon as the Certificate of Conference is complete.

*b. The FAC Adequately Alleges an Amount in Controversy Exceeding $75,000.*

8. Despite the number of lawyers representing Huawei, Huawei then argues that ECT has not adequately established that the amount in controversy for legal fees exceeds $75,000. Dkt. No. 15 at 6–7. The FAC says otherwise. ECT alleges that it "has incurred, and will continue to incur, millions of dollars of fees and expenses" defending against the allegations at issue in the

AAA Arbitration. Dkt. No. 3 ¶ 17. Getting to that number is no great mystery for lawyers that practice litigation. Simply put it is the hours multiplied by the rate. But there is more, ECT also seeks damages resulting from Huawei's alleged conduct, including amounts already incurred and additional relief arising from the arbitration. *Id.* ¶¶ 17, 26. Those allegations go beyond bare recitation of the jurisdictional threshold.

9. Huawei erroneously responds that the full amount of ECT's damages cannot yet be calculated because the arbitration remains pending. Uncertainty concerning the final amount of damages does not mean that no amount is presently in controversy as the damages already exceed the jurisdictional requirements for this Court. The FAC alleges substantial expenses that ECT has already incurred, in addition to damages that may continue to accrue. Huawei therefore has not demonstrated and could never demonstrate based upon the fees that were paid, that it is legally certain that ECT's claims are worth $75,000 or less. The amount-in-controversy requirement is satisfied.

B. **<u>ECT's Claims Are Ripe for Adjudication</u>**.

10. Huawei's ripeness argument rests primarily on the fact that ECT disputes whether the statements attributed to Huawei were actually made and that the AAA Arbitration has not yet concluded. Dkt. No. 15 at 7–11. Neither circumstance requires dismissal.

11. First, the alleged statements concern past events by a representative of Huawei named Steven Geiszler. The FAC identifies statements allegedly made by Geiszler between April 2022 and March 2024 and another alleged statement at a conference in 2025. Dkt. No. 3 ¶ 16. Whether those statements were actually made is therefore a disputed historical fact. It is not a future contingency that "may not occur as anticipated or indeed may not occur at all." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). Notably, Geiszler had never denied what he has been quoted as saying.

12. Huawei also makes the novel argument that ECT must know whether its arbitration opponents' factual allegations are completely true before it may pursue a claim arising from them even though whether they were true or false does not impact the accrual of the damages. Certainly, the Federal Rules impose no such requirement. Rule 8 expressly permits a party to plead alternative or hypothetical claims and permits inconsistent allegations. Fed. R. Civ. P. 8(d)(2)–(3). ECT makes no inconsistent allegations but if it did it would be permitted to do so and it is the falsity of the Geiszler position that is damage causing.

13. Nor does ECT's expressed doubt concerning the truthfulness of statements violate Rule 11. If Geiszler didn't say what he is quoted as saying a reasonable person would deny it – Geiszler never did. With that said, Rule 11 expressly permits factual contentions that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The FAC identifies the source of the allegations, the Huawei representative to whom the statements are attributed, the substance of the alleged statements, and the periods during which they allegedly occurred. Dkt. No. 3 ¶ 16. ECT need not concede that the statements were made in order to investigate whether Huawei in fact made them. The Claimant certainly offered those statements to the Panel and they had their intended impact.

14. Second, ECT has alleged an existing injury. Its arbitration opponents have already relied on the alleged Huawei statements in asserting claims against ECT, and ECT alleges that it has already incurred substantial fees and expenses defending against those claims. Dkt. No. 3 ¶ 17. The arbitration award may eventually affect the full measure of ECT's damages, but it does not eliminate the injury ECT alleges has already occurred. And the ripeness is even evident to Huawei. Huawei's own Motion acknowledges that the evidentiary hearing in the arbitration has concluded and that the matter is in its post-hearing stage. Dkt. No. 15 at 3–4. At most, the pending

award may justify temporarily staying this action to allow the arbitration panel to complete its work. It does not require dismissal.

C. **ECT Adequately Pleads a Breach-of-Contract Claim.**

*a. The FAC Identifies the Contractual Provisions Huawei Allegedly Breached.*

15. Huawei argues that ECT has failed to identify a contractual duty that Huawei allegedly breached. Dkt. No. 15 at 11–14. That argument understates both the PLA and ECT's allegations. Section 7.5 of the PLA expressly provides:

> *Each Party further represents and warrants that in executing this Agreement, it does not rely on any promises, inducements or representations made by any person, whether a Party to this Agreement or otherwise, with respect to this Agreement or any other business dealing with any person, whether or not a Party to this Agreement, now or in the future. PLA § 7.5.*

16. Section 7.5 therefore is not merely a standard merger clause. It is expressly denominated as a representation and warranty by each party. The PLA separately identifies the consideration paid by Huawei. Section 4.1 provides that Huawei will pay ECT a $6 million License Fee and expressly states that "[t]he License Fee will be the total compensation paid by Licensee under the terms and conditions of this Agreement." PLA § 4.1. Section 12.7 further provides that the PLA and its appendices "constitute the **entire agreement** between the Parties and supersede[] all prior written and oral agreements with respect to the subject matter hereof," subject to the specifically identified Saint Lawrence Communications Licenses. PLA § 12.7. Section 12.8 provides that, subject to limited exceptions not applicable here, the PLA "may not be amended except by a written agreement of the Parties." PLA § 12.8. But Huawei and Geiszler are alleged to have later changed their tune when they tied the PLA and the PSA together.

17. ECT alleges that the Claimant attributes statements to Geiszler as Huawei's representative claiming that Huawei provided consideration outside the PLA, that the later PSA was somehow linked to the PLA, and that some undisclosed side deal formed part of the

consideration supporting the PLA. Dkt. No. 3 ¶ 16. That allegation directly violates the representation and warranty by Huawei. That is why ECT further alleges that, if those statements were actually made on Huawei's behalf then they contradict Huawei's representations in the PLA. *Id.* ¶¶ 16, 23–25. No doubt the Claimant's in the arbitration intended to falsely offer that the PSA was linked to the settlement of the litigation that had been pending in this Court. Huawei and Geiszler openly joined them in that effort because it directly benefited Huawei.

18. This was no casual settlement as it came directly on the heels of adverse rulings to the interest of Huawei and coincided with actions taken by the US Government to exclude Huawei from doing business in the USA under national security concerns. The value of a case against Huawei was sinking because they could no longer do business in the USA. Simply put, it's hard to infringe when you cannot do business. Given the heightened attention then being given to Huawei this Court should know that the circumstances of the PLA all indicate that it was negotiated by sophisticated businesspeople and that the negotiations took several months. Demonstrating the separate nature of the PLA and the much later PSA were handled by different groups of people and involved very different terms and circumstances.

19. Geiszler knows what he is doing here and intended his conduct. Among other things, Huawei was represented by Geiszler as both an attorney and a businessperson in reaching the PLA. Yet, the evidence will show that he had no role in the PSA. Multiple drafts of the PLA were made but one consistency was always the inclusion of the unambiguous representation and warranty that the PLA resolved the entire case – there were no other agreements – and it was the complete settlement. Huawei's later alliance with the Claimant to now suggest that the PLA and the later PSA were both consideration for an earlier settlement belies the whole reason for the unambiguous integration clause and is a bald attempt to defeat the parol evidence rule. See, *ISG*

*State Operations, Inc. v. National Heritage Ins. Co., Inc*. 234 S.W.3d 711, 722 (Tex. App. – Eastland, 2007). The parol evidence rule is here for a reason.

20. Huawei therefore purposefully mischaracterizes ECT's claim as an attempt to create an affirmative obligation from a generic merger clause. ECT does not rely on § 12.7 alone. Its claim rests on Huawei's express representation and warranty in § 7.5, the PLA's express identification of Huawei's total compensation in § 4.1, and the integration and written-amendment provisions in §§ 12.7 and 12.8. ECT was entitled to the full protection of the parol evidence rule and had no reason to ever expect that Huawei's agent Geiszler would be identified as a witness to say otherwise. This is nothing abstract here because the Claimant explained the intent in a letter to the Panel. The Claimant highlighted its parol evidence purposes, and intended to offer parol evidence, all with the help of Huawei and Geiszler, to ignore and breach the integration clause:

> Mr. Geiszler is a third party, a former in-house Huawei lawyer, and a witness with highly relevant information for this proceeding. One of the key transactions at issue here is the settlement of a dispute between ECT/St. Lawrence and Huawei. Respondents contend that matter was settled solely in exchange for a Patent License Agreement calling for a $6 million payment, and that a near-contemporaneous Patent Sale Agreement—which transferred valuable patents to an entity controlled by Respondents (CCC)—was unrelated to that settlement. St. Lawrence contends, by contrast, that those two agreements were both part of a single, unified transaction, and that Respondents structured the settlement in this manner in an attempt to deprive St. Lawrence of the benefits of the Patent Sale Agreement—which Respondents never disclosed to St. Lawrence that subsequently generated some $100 million in proceeds.
>
> Mr. Geiszler—as the Huawei lawyer who supervised these transactions—has meaningful testimony to provide. Specifically, Mr. Geiszler has consistently told St. Lawrence, Respondents, and AZA[1] that—just as the documents show and circumstances dictate—the Huawei Patent Sale Agreement and Patent License Agreement were indeed all part of one transaction, and St. Lawrence anticipates he will so testify. This likely explains Respondents' effort to keep him from testifying—including by recently suing Huawei, Mr. Geiszler's then-employer, and gratuitously naming Mr. Geiszler in that complaint in a manner reasonably understood as an effort to intimidate him.

21. Whether the Geiszler/Huawei statements could be fairly alleged by ECT to have been made is not reasonably in controversy based upon this explanation by Claimant to the Panel. The rest of the letter from the arbitration is redacted for confidentiality purposes because it does not impact the issue *sub judice*. What Huawei intended or understood when entering the PLA and whether the evidence reported by Claimant that "… Mr. Geiszler has consistently told St. Lawrence … the Huawei Patent Sale Agreement and the Patent License Agreement were indeed all part of one transaction …" prove a breach are merits questions – not pleading infirmities. This disclosure establishes that the breach occurred because Huawei supports a false set of facts and, as Claimant explains, Geiszler was front and center in that breach. And the evidence will show that ECT incurred well more than $75,000 in fees alone battling over the prospect of the mythical Geiszler testimony, his efforts to avoid subpoenas, and the arguments with the Panel over the evidence that the Claimant was proposing to admit proffered by Geiszler.

*b. ECT's Alternative Allegations Do Not Defeat Plausibility.*

22. Huawei mistakenly argues that ECT's statement that it "very much doubts" that the alleged Huawei statements were made defeats the plausibility of its own claim. Dkt. No. 15 at 14–15. That argument conflates ECT's denial of the allegations asserted against it in the arbitration with an admission that Huawei could not have made the alleged statements. No doubt that Huawei's own Geiszler is reported to have made these statements – see the prior page. That is why ECT alleged that its arbitration opponents have attributed specific statements to a particular Huawei representative named Geiszler. Dkt. No. 3 ¶ 16. While ECT disputes the truth of the underlying assertions and it does not disagree that the Huawei representative – Geiszler – actually made them. Huawei was retrading the deal in the settlement because it benefitted Huawei.

23. Of course, that is precisely why the allegations are pleaded conditionally and, maybe, after a trial Huawei will prove that the Claimant was falsely representing to the panel what

Geiszler told them – it's possible but not likely that a lawyer would falsely represent what Geiszler was going to say. In furtherance of this fence riding type of allegation, Rule 8 permits a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically" and expressly provides that a party may state "as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2)–(3). ECT therefore is not required to adopt its arbitration opponents' version of events as true merely to plead the consequences that would follow if those allegations were proven. Huawei and Geiszler made their own bed with their odd decision to retrade the settlement and align with the Claimant.

D. **Huawei's Damages Arguments Do Not Require Dismissal**.

24. Huawei argues that the FAC does not adequately allege foreseeability or that ECT's claimed damages are directly traceable to Huawei. Dkt. No. 15 at 15–16. The FAC alleges a direct factual connection between the alleged Huawei statements and at least some of the injury ECT claims by exploding the Claimant's damage model and ripening a whole series of fights over the supposed evidence. Specifically, ECT alleges that its arbitration opponents are relying on statements attributed to Huawei concerning supposed extra-contractual consideration for the PLA and that those allegations have required ECT to incur substantial fees and expenses defending itself in the arbitration. Dkt. No. 3 ¶¶ 16–17. And, by the way, Huawei has never denied that Geiszler said what he is alleged by the Claimant to have said. We are eager to see if they can!

25. At this stage, ECT need not establish the ultimate amount or recoverability of every category of damages requested in the FAC. ECT will prove more than $75,000 in attorney's fees alone in dealing with the effort by Huawei and Geiszler to help Claimant prove that "… the Huawei Patent Sale Agreement and the Patent License Agreement were indeed all part of one transaction …." Whether all claimed damages were foreseeable, sufficiently caused by Huawei's conduct, and ultimately recoverable under the PLA and Texas law presents merits questions that should be

resolved on a developed factual record. Even if Huawei ultimately succeeds in limiting particular categories of damage, that will not establish that ECT failed to plead a breach-of-contract claim altogether. And the value of those damages far exceeds the threshold for this Court.

E. **The Face of the FAC Does Not Establish a Limitations Bar**.

26. Huawei's limitations argument also depends upon resolving disputed factual issues in Huawei's favor. Huawei mistakenly contends that any alleged breach necessarily occurred in March 2020 when the PLA was executed because Huawei supposedly relied upon an undisclosed term or additional consideration at that time. Dkt. No. 15 at 17–18. The FAC, however, expressly alleges the opposite because Huawei and Geiszler changed their positions years later. ECT alleges that the PLA accurately states the parties' agreement in 2020 and that it is unaware of, and had not discovered, any hidden consideration or side agreement. Dkt. No. 3 ¶¶ 13–16. Indeed, § 4.1 of the PLA states that the $6 million License Fee constitutes the "total compensation" paid by Huawei under the PLA. PLA § 4.1. That statement alone did not accrue into a justiciable claim until the breach arose years later through Geiszler's allegiance to Claimant.

27. The allegations that generated this dispute concern statements later attributed to Huawei, including statements allegedly made between April 2022 and March 2024 and another alleged statement in 2025. Dkt. No. 3 ¶ 16. The Claimant's 2026 Declaration filed by its Corporate Representative explained the conversation with Geiszler thusly: **"[h]e confirmed that the patent sale agreement to CCC was in fact tied to the patent license agreement Huawei had entered into with St. Lawrence [Claimant]. In other words, the Huawei proceeds [ECT] had directed to their own entity were proceeds that should have flowed (in part) to St. Lawrence**…." Huawei's proposed March 2020 accrual date requires the Court to assume that the alleged statements are true, infer from those statements that Huawei actually relied upon some undisclosed

information when executing the PLA, and further infer that ECT necessarily knew of that undisclosed arrangement with Huawei in 2020. No evidence will support that fantasy by Huawei.

28. A claim for the breach of a representation or warranty accrues when the facts are learned that support the breach. In *TIB – The Independent BankersBank v. Canyon Community Bank,* 13 F. Supp.3d 661 (N.D. Texas 2014), the trial court considered when the breach of a representation accrued. The TIB case concerned the breach of a representation as to the quality and financial condition of a mortgage loan. The TIB case analyzed the "discovery rule" as it applies to contracts and considered its impact on a 12(b)(6) Motion to Dismiss. *Id.* at 667 - 668. In *TIB,* the Canyon Community Bank claimed the repurchase obligation expired four years after the 2008 loan sale and asserted limitations. In response to the allegation, much like ECT does here, TIB alleged that it was unaware of the issues with the Loan until on or about January 31, 2013, and that was when TIB demanded repurchase based on the representations." *Id*. at 668.

29. ECT claims, quite logically, that it did not know that it had an issue with the representations from Huawei or any knowledge that the PSA and the PLA were somehow related until Geiszler made it up in recent communications with the Claimant. Nobody ever said that to ECT until the discovery phase of the arbitration and that is well within the last four years required for a justiciable breach of contract. As ECT believes that this Court should rule just like *TIB*; namely, the *TIB* trial court refused the requested 12(b)(6) dismissal on limitations stating:

> *Because the discovery rule, if applicable, would toll the four-year statute of limitations until TIB knew or should have known of the alleged breach, the court is unable to conclude from the face of the pleadings that the statute of limitations bars TIB's remaining breach of contract claims.*

The *TIB* trial court denied the 12(b)(6) Motion. *Id*. at 668-669. Notably, if Huawei ever files an answer to the Complaint pleading limitations as a bar then ECT will officially plead the discovery rule and all of the other defenses to limitations.

30. Notably, and in the context of this Motion, none of those propositions are established from the face of the FAC. A limitations defense may be resolved under Rule 12(b)(6) only where the bar is evident from the plaintiff's pleadings. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); see also *Pace v. Cirrus Design Corp.*, No. 2:24-CV-00539-JRG, 2026 WL 2042860, at *2 (E.D. Tex. July 14, 2026). Here, the pleadings do not conclusively establish Huawei's proposed accrual date and the real facts will prove dramatically otherwise – nobody knew of the position that Geiszler and Huawei would later take when they decided that the integration clause really had no meaning. The limitations defense therefore cannot support dismissal at this stage.

F. **<u>ECT's Request for Declaratory Relief Presents an Existing Controversy</u>**.

31. Huawei also seeks dismissal of ECT's declaratory-judgment request, arguing that ECT has not demonstrated an adverse legal interest and that the Court should decline to exercise jurisdiction under the *Trejo* factors. Dkt. No. 15 at 18–20.

32. First, ECT has now invoked the Federal Act in its request for leave to amend the FAC to the Second Amended Complaint. ECT seeks a declaration under the Federal Act concerning the meaning and legal effect of an existing contract between ECT and Huawei. Specifically, ECT seeks a declaration that the PLA is a fully integrated agreement enforceable according to its terms and that no additional oral agreement or hidden consideration forms part of the PLA. Dkt. No. 3 ¶ 18. That request tracks the actual language of the agreement. Section 4.1 expressly identifies Huawei's total compensation under the PLA, § 12.7 identifies the PLA as the parties' entire agreement regarding its subject matter, and § 12.8 requires any amendment to be in writing.

33. Second, this dispute is not abstract. Statements attributed to Huawei concerning the meaning, consideration, and relationship of the PLA to other business dealings have been used

against ECT in the AAA Arbitration. ECT alleges that those assertions have caused it present harm and created uncertainty regarding the parties' contractual rights. Nor do the *Trejo* factors compel dismissal. There is no parallel state-court proceeding between ECT and Huawei. Huawei is not a party to the AAA Arbitration, and the arbitration panel cannot adjudicate ECT's contractual claims against Huawei or enter relief binding Huawei. There is likewise no state-court decree for this Court to interpret.

34. By agreement the PLA itself also expressly provides that "[a]ny legal action or other legal proceeding relating to this Agreement or the enforcement of any provision of this Agreement must be brought or otherwise commenced in a federal or state court in Texas," and Huawei expressly agreed not to object to the jurisdiction of those courts in proceedings relating to the PLA. PLA § 11.1. The factual overlap with the arbitration may support allowing the arbitration panel to complete its work first. It does not establish that declaratory relief concerning Huawei's own contract should be dismissed.

G. **Alternatively, the Court Should Stay This Action Pending the Arbitration Award**.

35. Huawei repeatedly relies, erroneously, on the pending AAA Arbitration in arguing that ECT's claims and damages are premature. See Dkt. No. 15 at 3–4, 7–11, 15–16, 19–20. Damages were already incurred fighting about the Geiszler testimony and preparing, for days, to defend his contract breaching and fanciful allegations on behalf of Huawei. The arbitration, however, has already proceeded through its evidentiary hearing and it is presently in the post-hearing stage. A limited stay would permit the arbitration panel to issue its award before the parties and allow this Court the option not to expend additional resources addressing factual issues or damages matters that may be narrowed by, or expanded by, that award. Plaintiff is not opposed to a stay if this Court so wishes.

36. The Fifth Circuit recognizes that district courts have discretion to stay litigation involving nonarbitrating parties pending completion of an arbitration as an exercise of their inherent authority to control their dockets. *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993); see also *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983). Courts within this Circuit have exercised that discretion where the litigation and arbitration involve substantially overlapping issues and completion of the arbitration may assist in resolving the litigation. *United States ex rel. John Jamar Constr. Servs. v. Travelers Cas. & Sur. Co. of Am.*, No. H-14-3363, 2015 WL 757858, at *1–3 (S.D. Tex. Feb. 23, 2015). The same considerations apply here. Huawei itself argues that the pending arbitration affects the scope and ripeness of ECT's damages which is partially correct as, for now, the conduct of Huawei and Geiszler may only be the attorney's fees that were incurred and not additional damages – the Panel's ruling will make that clear. If the Court shares that concern, a limited stay until the arbitration award issues directly addresses it without extinguishing ECT's claims.

H. **<u>At Minimum, ECT Should Be Granted Leave to Amend.</u>**

37. Finally, even if the Court concludes that some aspect of the FAC is insufficiently pleaded, dismissal with prejudice is not warranted. This is the first motion directed at the sufficiency of ECT's substantive allegations, and any pleading deficiencies identified by the Court can be addressed through amendment. See *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (explaining that district courts generally should allow plaintiffs at least one opportunity to cure pleading deficiencies before dismissing with prejudice unless amendment would be futile). Accordingly, if the Court determines that additional allegations concerning ECT's citizenship, the contractual basis for its claims, damages, accrual, or any other issue are required, ECT respectfully requests leave to amend rather than dismissal with prejudice. ECT has already prepared its Motion for Leave to Amend and the related Second

Amended Complaint. Once the Certificate of Conference is completed it will be filed – possibly simultaneously with this filing.

## III. CONCLUSION

For the foregoing reasons, ECT respectfully requests that the Court deny Huawei's Motion to Dismiss. Alternatively, to the extent the Court determines that issuance of the final award in AAA Case No. 01-24-0004-3752 will materially clarify the issues presented in this action, ECT requests that the Court stay this action pending issuance of the final arbitration award. To the extent the Court determines that any of ECT's jurisdictional or substantive allegations require further clarification, ECT alternatively requests leave to amend its First Amended Complaint.

Respectfully submitted this 6th day of October, 2026.

**HIRSCH & WESTHEIMER, P.C.**

By: */s/Eric Lipper*

Eric Lipper
State Bar No. 12399000
Federal ID No. 11442
Lakia' S. McCline
State Bar No. 24093485
Federal ID No. 3364182
1415 Louisiana St., 36th Floor
Houston, Texas 77002
Tel: (713) 223-5181
Fax: (713) 223-9319
Email: elipper@hirschwest.com
Email: lmccline@hirschwest.com

**THE DACUS FIRM, P.C.**

By: */s/Deron R. Dacus*

Deron R. Dacus
Texas Bar No. 00790553
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: 903-705-1117
E-mail: ddacus@dacusfirm.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of October, 2026, a copy of the foregoing Response was served on counsel of record in accordance with Rule 5(b) of the Federal Rules of Civil Procedure via the Clerk of the Court through the ECF system.

*/s/Eric Lipper*
Eric Lipper